IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-4046-01-CR-C-NKL |
| | ) | |
| RENE AUGUST MALCUIT, JR., | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Before this court is the December 11, 2005, motion of defendant Rene August Malcuit, Jr., to suppress evidence. The Government has responded in opposition to the motion. A hearing was held on the motion on January 24, 2006.

### Facts

On April 26, 2004, Pettis County Sheriff Captain Tim Carr sought and obtained a search warrant for the mobile home residence of Stephen Lindsey on McVey Road in Pettis County, Missouri. The affidavit submitted by Capt. Carr, in support of the search warrant, set forth information received from three confidential informants providing that Mr. Lindsey had been manufacturing and distributing methamphetamine from his mobile home on McVey Road. The affidavit set forth, among other information, that there was frequent stop-and-go traffic to and from the Lindsey residence, with visits often lasting less than five minutes. Based upon the information submitted in the affidavit, a Pettis County search warrant was issued for the Lindsey residence to search for evidence regarding the manufacture, distribution and use of methamphetamine.

On April 29, 2004, Pettis County officers met at the Pettis County Sheriff's Department to brief on the execution of the search warrant at the Lindsey residence. The briefing included information as to the rural Pettis County location of the Lindsey residence, and that the Lindsey residence was located on a private lane shared by only one other residence, which was occupied by an elderly female. The private lane was located off McVey Road. The Lindsey residence

was the mobile home at the end of the private lane, and the other residence, occupied by the elderly female, was located near the entrance of the private lane. The briefing also included information about stop-and-go traffic to the Lindsey residence believed to be related to the methamphetamine manufacturing and distribution. The search warrant was subsequently executed after dark in the evening hours of April 29, 2004.

At the time the warrant was executed by Pettis County Sheriff Officers, Lindsey was the only person at the residence. Officers removed Lindsey from the inside of the trailer to the front stoop area, where Capt. Carr spoke with him. While speaking with Lindsey, Capt. Carr received information from officers searching the residence that evidence of drug trafficking was being seized from the trailer. Lindsey admitted to Capt. Carr that he possessed methamphetamine for sale and he had sold methamphetamine out of his residence. Subsequently, while the search was still being executed, Capt. Carr and two officers, Deputies Lorenz and Tylar, who were at the front stoop area of the mobile home, observed a dark SUV vehicle turn onto the private lane leading to Lindsey's mobile home. The vehicle was observed heading toward the Lindsey mobile home; however, when its lights illuminated the marked Sheriff's Department vehicles parked in front of the Lindsey trailer, the vehicle was observed to pause for a moment, and then turn around. The vehicle was observed turning around in the second entrance of the circular driveway located in front of the only other residence on the private lane.

Capt. Carr instructed Deputy Lorenz to stop the SUV vehicle and identify the driver. Deputy Lorenz followed the SUV, never losing sight of it, and subsequently pulled over the SUV, a dark blue Ford, at the intersection of McVey Road and Marshall. As Deputy Lorenz approached the driver, he could readily see, in plain view through the back window of the SUV, two white propane tanks and a long black hose curled up on top of the tanks. Based upon Deputy Lorenz's training and experience, he recognized the tanks and equipment to be that which is commonly used to steal anhydrous ammonia for the production of methamphetamine. Deputy Lorenz made contact with the driver of the SUV, obtained his identification, and returned to his patrol car. Deputy Lorenz contacted Capt. Carr, via the police radio, identified the driver of the vehicle as Malcuit, and advised the vehicle contained drug paraphernalia. Capt. Carr instructed Deputy Lorenz to go ahead and take Malcuit into custody and sent Deputy Tylar to assist. Malcuit was subsequently arrested and placed in Deputy Lorenz's patrol car. A search

2

of the vehicle revealed a 9mm pistol on the passenger floor board, and numerous items related to the theft of anhydrous ammonia. Deputy Lorenz read Malcuit his Miranda rights, and Malcuit subsequently stated his knowledge of the pistol and ownership of the drug paraphernalia.

## Discussion

*Reasonable Suspicion*

Defendant argues that his Fourth Amendment rights were violated when Deputy Lorenz stopped his SUV and detained him. Defendant argues Deputy Lorenz did not have reasonable suspicion that criminal activity was afoot to justify the seizure of his vehicle.

The Fourth Amendment permits police to make an investigative stop of a vehicle if they have a "reasonable suspicion that the vehicle or its occupants are involved in criminal activity." United States v. Potts, 275 F.3d 714, 718 (8th Cir. 2002) (citing United States v. Bell, 183 F.3d 746, 749 (8th Cir. 1999)); Terry v. Ohio, 392 U.S. 1, 20-22 (1968). Police must have a particularized objective basis for suspecting criminal activity at the time the stop is made; however, such basis need not rise to the level of probable cause. United States v. Potts, 275 F.3d at 718. Reasonable suspicion requires that an officer be able to "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio, 392 U.S. at 21. An "inchoate and unparticularized suspicion or hunch" is insufficient. Id. The totality of circumstances in a particular case determines whether there was reasonable suspicion to make a valid investigatory stop of a vehicle. United States v. Potts, 275 F.3d at 718.

In the instant case, officers had received information, which they included in their affidavit for search warrant, that there was stop-and-go traffic at the Lindsey residence, indicative of production and distribution of methamphetamine. When Capt. Carr and Deputies Lorenz and Taylor observed defendant's vehicle, they were in the process of executing the search warrant for the Lindsey residence, which had thus far turned up evidence of drug trafficking, and Lindsey, the sole occupant of the residence, had admitted he sold methamphetamine out of the residence. Thus, when defendant's vehicle turned onto the rural private lane heading toward the Lindsey residence, and then stopped, paused and turned around when its lights illuminated the marked Sheriff's Department vehicles parked outside the Lindsey residence, Capt. Carr and the Sheriff Deputies drew the natural inference that the vehicle was

3

coming to the Lindsey residence for purposes of either methamphetamine distribution, production, or use.  This inference was supported by the manner in which defendant turned around.  Capt. Carr and the deputies observed the vehicle to pause immediately upon its lights illuminating the Sheriff's Department vehicles, and then proceed to quickly turn around in the second entrance of the circle drive belonging to the only other residence which shared the private lane.  The second entrance to the circle drive was the entrance located closest to Lindsey's mobile home and farthest from the main public road, McVey Road.  Thus, the officers could reasonably infer the vehicle was not turning around because it was lost, but rather because its lights had illuminated the Sheriff's Department vehicles at the Lindsey residence.  Had the occupant(s) of the vehicle been lost, it can reasonably be assumed that the driver would have turned around using the first entrance to the circle drive, closest to McVey Road.  Capt. Carr and the deputies were also aware that an elderly female was the occupant of the other residence with the circle drive, and defendant's quick turn around in her driveway gave them no indication that defendant was there to visit such resident.  Defendant's failure to continue down the lane to the Lindsey residence to check the well-being of those at the Lindsey residence, upon observation of the Sheriff's Department vehicles, also gave Capt. Carr and the deputies no reason to believe that defendant was a family member of the Lindsey residence.

"When a suspect approaches or seeks admission to a likely drug house that is being searched, moderate evidence connecting that person with the house has been held to support a Terry stop."  Id.; see also United States v. Patterson, 885 F.2d 483 (8th Cir. 1989) (court upheld a Terry frisk of defendant and seizure of his gun when defendant drove up to and approached a house that was being searched, in which there was evidence of ongoing narcotics operations); United States v. Harvey, 897 F.2d 1300 (5th Cir. 1990), overruled, in part, on other grounds, United States v. Lambert, 984 F.2d 658 (5th Cir. 1993) (court upheld police investigatory stop of vehicle which had pulled up in an alley adjacent to the house where the police, conducting a search warrant, had found drugs); United States v. Moreno, 891 F.2d 247, 249 (9th Cir. 1989) (reasonable for police to make Terry stop of a vehicle that had driven toward a house filled with drugs and cash, and then turned and drove away upon sight of the police vehicles).  In the instant case, based upon the totality of the credible evidence, Capt. Carr and Deputies Lorenz and Taylor had a reasonable articulable suspicion that defendant was driving down the private rural

4

lane for purposes of involving himself in the criminal activities of methamphetamine at the Lindsey residence. The court further notes that to the extent Capt. Carr may have had additional information beyond that of Deputies Lorenz and Tylar in support of reasonable suspicion, as a result of his supervisory position held and his direct conversation with Lindsey, such information can be relied on by all officers involved. United States v. Robinson, 119 F.3d 663, 666-67 (8th Cir. 1997). All information known to team of officers involved in an investigation can be relied on for purposes of justifying reasonable suspicion for a stop of a vehicle. Id. Thus, any reasonable suspicion held by Capt. Carr, who directed Deputy Lorenz to stop and identify defendant's vehicle, is also held by Deputy Lorenz. Finally, the court notes that defendant has failed to offer any reason why he was on the private rural lane driving toward the Lindsey residence. Therefore, pursuant to the discussion of this court, the court finds there to have been reasonable suspicion to conduct an investigatory stop defendant's vehicle.

*Plain View*

Upon stopping defendant's vehicle for purposes of an investigatory stop, Deputy Lorenz immediately viewed drug paraphernalia through the back window of defendant's SUV. Deputy Lorenz states that such drug paraphernalia was in plain view. "For evidence to be legally seized pursuant to the plain-view doctrine, the officer must not have violated the Fourth Amendment to be in the place where the evidence could be plainly viewed; the incriminating nature of the evidence must have been immediately apparent; and the officer must have had a 'lawful right of access to the object.'" United States v. Terry, 400 F.3d 575, 580 (8th Cir. 2005) (quoting Horton v. California, 496 U.S. 128, 136-37 (1990)). In the instant case, the court has established that defendant's vehicle was lawfully stopped. Additionally, the credible evidence is that Deputy Lorenz plainly viewed through defendant's SUV back window, two white propane tanks which had a long black hose curled up on them, which were readily identifiable by Deputy Lorenz, based upon his training and experience, to be drug paraphernalia for purposes of methamphetamine production. Such readily identifiable drug paraphernalia provided Deputy Lorenz with the probable cause necessary to arrest defendant and conduct a search of his vehicle.

*Conclusion*

Based upon the credible evidence presented, the court finds no basis for suppressing the evidence seized from defendant's vehicle on April 29, 2004. Deputy Lorenz had reasonable

suspicion for stopping defendant's vehicle, and the subsequent seizure of drug paraphernalia and a pistol are supported by the plain-view doctrine.

IT IS, THEREFORE, RECOMMENDED that defendant's motion to suppress be denied [15].

Under 28 U.S.C. § 636(b)(l), the parties may make specific written exceptions to this recommendation within ten (10) days. If additional time is needed, a motion for an extension of time must be filed within ten days. The motion should state the reasons for the request. See Nash v. Black, 781 F.2d 665, 667 (8th Cir. 1986) (citing Thomas v. Arn, 474 U.S. 140 (1985)); Messimer v. Lockhart, 702 F.2d 729 (8th Cir. 1983). Failure to make specific written exceptions to this report and recommendation may result in a waiver of the right to appeal.

Dated this 21st day of February, 2006, at Jefferson City, Missouri.

/s/

WILLIAM A. KNOX
United States Magistrate Judge